Newman JOHNSTON III and Phillip C. Asher, Plaintiffs,

v.

Bing T. SO and May So, Defendants.

Civ. No. 1:89CV274.

United States District Court, N.D. Indiana, Fort Wayne Division.

Aug. 10, 1994.

Newman Johnston, III, pro se.

Phillip C. Asher, pro se.

James Fenton, Barrett and McNagny, Fort Wayne, IN, John H. Shean, Bloomington, IN, for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Defendants Bing T. So's and May So's (hereinafter, "Sos") Motion for Summary Judgment filed on May 10, 1994. Plaintiffs Newman Johnston III (hereinafter, "Johnston") and Phillip C. Asher (hereinafter, "Asher") have not responded to the Sos Motion. For the following reasons, Defendants' Motion for Summary Judgment will be GRANTED.

### PROCEDURAL BACKGROUND

This litigation commenced on December 18, 1989 when Johnston and Asher filed their complaint to collect on the Sos' promissory

note. The Sos did not file an answer. Thereafter, the parties engaged in successful settlement negotiations. On July 19, 1990, the court entered Judgment Dismissing the Action By Reason of Settlement.

However, the execution of the settlement agreement did not proceed as agreed, and on August 9, 1993, the Sos filed a motion to vacate the dismissal order and to reopen the case. On September 2, 1993, Plaintiff Asher filed a motion to enforce the settlement. On October 1, 1993, the court vacated the dismissal order and reopened the case. On October 25, 1993, the court granted Asher's motion to enforce the settlement subject to Asher's posting a bond or cash deposit with the court. *Johnston v. So*, No. 89–CV–274 (N.D.Ind. Oct. 25, 1993). The court stated "[s]hould Asher fail to post the required bond or cash deposit within ninety (90) days of the entry of this Order, the parties' previous settlement agreement will be set aside." *Id.* at 7. Asher failed to post a bond or cash deposit with the court. Therefore, *per the terms of the previous Order, the parties' previous settlement agreement is set aside.*

The Sos have moved for summary judgment on the ground that collateral estoppel bars Johnston and Asher from pursuing the present claims.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). The standard

for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *and Valentine v. Joliet Twp. High School Dist. No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *and Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

Substantive law determines which facts are material; that is, which facts might affect the

outcome of the suit under the governing law. *Id.* at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R.Civ.P. 56(c), (e). To establish a genuine issue of fact the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First Nat'l Bank of Cicero v. Lewco Sec. Corp.,* 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

### FACTUAL BACKGROUND

On December 22, 1982, the Sos invested in a limited partnership known as Aqua–Solar Associates, Ltd. (hereinafter, "Aqua"). Aqua was formed in 1982 by A.T. Bliss and Company (hereinafter, "Bliss"). The Sos acquired their interest in Aqua by executing a promissory note. The note was executed in the amount of $112,500.00 plus nine percent interest for the purchase of a full unit subscription in Aqua. Bliss sold these Aqua interests to about 120 investors[1] in total.

As drafted, the Sos' note was payable to Aqua, but sometime after 1982, the note was assigned to Johnston and Asher. In their complaint, Johnston and Asher claim to be the owners and holders in due course of the note[2]. In Count I of the Complaint, Johnston and Asher seek to collect on the Note. Johnston and Asher have filed several unsuccessful actions in other jurisdictions against other Aqua investors to collect on notes identical to the note executed by the Sos. *See, Bumba,* 764 F.Supp. at 1268; *Johnston v. Kunkel,* 1991 WL 335836, 1991 U.S.Dist.

LEXIS 19690 (W.D.Mich.1991); *and Johnson v. Martin,* No. IP 90–1669–C, 1992 WL 678508 (S.D.Ind.1992).

In Count II of the Complaint, the plaintiffs seek to enforce an "Assumption Agreement" (hereinafter, "Agreement") executed by the Sos in favor of Bliss. According to the face of the Agreement, the Sos were partners in the limited partnership of Solar–Bliss '83. *See* Comp.Ex. F. Solar–Bliss '83 apparently executed a promissory note in favor of Bliss for the purchase of equipment. By signing the Agreement, the Sos agreed "to personally assume [their] pro rata share, as among the Limited Partners, of the principal amount of the recourse note of [Solar–Bliss '83]" and to unconditionally promise to pay to Bliss all sums due on the note, not to exceed $32,500. *Id.* Bliss, now known as Omni Equities, Inc., assigned the Agreement to Consumer Finance Corp., formerly MagnaCard, who assigned the Agreement to Asher and Johnston.

### DISCUSSION

In analyzing this summary judgment motion, the court must first determine whether the pleadings and record show that there is no genuine issue of material fact. Fed. R.Civ.P. 56(c). The Sos did not answer the complaint prior to filing the summary judgment motion. Therefore, the facts alleged in Johnston and Asher's complaint are deemed admitted. Fed.R.Civ.P. 8(d). The defendants have not offered any facts to contradict those alleged in the complaint. Accordingly, the court finds there is no genuine issue of material fact.

The court must now determine whether "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In their Motion for Summary Judgment, the Sos contend collateral estoppel bars Johnston and Asher from collecting on the Sos' promissory note and Agreement and mandates that summary judgment be entered in their favor, citing *Johnston v. Bumba,* 764 F.Supp. 1263 (N.D.Ill.1991), *aff'd,* 983 F.2d 1072 (7th

---

1. *Johnston v. Bumba,* 764 F.Supp. 1263, 1268 (N.D.Ill.1991).

2. Johnston has since transferred his interest to Asher. (Plaintiff's Motion to Enforce Settlement Agreement and Declaration in Support Thereof, pp. 3–4).

Cir.1992) and *Johnson v. Martin*[3], No. IP 90–1669–C, 1992 WL 678508 (S.D.Ind.1992).

The plaintiffs in the present case also filed the suit in *Bumba*. In 1988, Johnston and Asher filed eighteen (18) actions in the United States District Court for the Northern District of Illinois against investors in Aqua–Solar Associates, Ltd. *Bumba*, 764 F.Supp. at 1268. In each action, the plaintiffs sought to collect on promissory notes the defendants had executed as part of their investment in the Aqua partnership. District Judge Marvin Aspen consolidated the cases and seventeen (17) of the defendants agreed to be bound by the disposition of the suit against Lincoln Bumba. Following a bench trial, Judge Aspen entered judgment in favor of the defendants. *Id.* Judge Aspen found the defenses raised against enforcement of the note were meritorious, and therefore, barred enforcement of the notes. The meritorious defenses included impermissible sale of securities by an unregistered offering and violations of the securities laws.

In addition, Judge Aspen found A.T. Bliss and Company had formed four partnerships (Aqua–Solar, Bliss–Solar, Solar–Bliss and Bliss Partners) that all used the same business plan, the same general partner, the same servicing agent and the same form of investment. *Bumba*, 764 F.Supp. at 1269. Moreover, Judge Aspen held that the similarities between the partnerships necessarily resulted in a finding that the offerings of the four partnerships should be considered as a single integrated offering. *Id.* at 1272.

Subsequently, Johnston and Asher filed similar suits across the country. One suit, *Johnson v. Martin*, was filed in the United States District Court for the Southern District of Indiana. *See*, No. IP 90–1669–C (S.D.Ind.1992). Johnston and Asher sought to collect on a promissory note that had been executed by Aqua investors. The defendants, Robert and Deanna Martin, raised eight affirmative defenses in their Answer to the Complaint, including the defense that the plaintiffs were barred from obtaining relief by the doctrine of collateral estoppel and the defense that the partnership interests were sold in violation of the federal securities laws. The court granted summary judgment in favor of the Martins.

■ In the present case, the defendants have not filed an answer to the complaint. Accordingly, the defendants have neglected to utilize the appropriate procedural vehicle for raising affirmative defenses, to wit, by filing an answer. Fed.R.Civ.P. 8(c). However, in their Motion for Summary Judgment the defendants have raised the defense of collateral estoppel. Based on the circumstances of this case, the court finds the Sos have timely raised this affirmative defense. The purpose of the rule requiring affirmative defenses to be raised in the answer is to provide adequate notice to the opposing party and opportunity to argue its position. *Richmond Steel, Inc. v. Legal and General Assur. Soc., Ltd.*, 821 F.Supp. 793, 796 (D.P.R.1993). The Sos have raised their affirmative defense at a very early stage of this proceeding. Moreover, the plaintiffs are no longer actively litigating this case. They did not initially respond to the summary judgment motion and have not responded to the court's Notice and Order of June 14, 1994, giving the plaintiff's twenty days additional time to respond. The plaintiffs have been given adequate notice of the defense and opportunity to respond. Accordingly, the court finds the defendants have adequately raised the affirmative defense of collateral estoppel. *Id.*

■ Collateral estoppel bars Johnston and Asher from relitigating the issues settled in *Bumba*. The doctrine of collateral estoppel, like the doctrine of *res judicata*, "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless liti-

---

3. The Southern District of Indiana case is captioned: *Newman Johnson, II and Phillip C. Asher v. Robert D. Martin and Deanna Martin*. The court notes that the plaintiffs in the Southern District of Indiana case are the same as the plaintiffs in the present case and the case in the Northern District of Illinois, even though the Southern District of Indiana case inadvertently left out the "t" in "Johnston". Throughout this order, the court will use the title of record ("*Johnson v. Martin*") as the designation for the case from the Southern District of Indiana.

gation." *Rockford Mutual Insurance Co. v. Amerisure Insurance Co.,* 925 F.2d 193, 198 (7th Cir.1991) (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979)). The test used to determine whether collateral estoppel applies has four (4) elements:

1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*La Preferida v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 905–906 (7th Cir.1990) (citations omitted). The satisfaction of the four required elements mandates the application of the doctrine of collateral estoppel. Clearly, the Sos are entitled to judgment as a matter of law.

### Collateral Estoppel

■ The first element of collateral estoppel requires identical issues. With respect to the plaintiff's action to collect on the promissory note, the Sos satisfy the first element of collateral estoppel because they seek to bar enforcement of the note due to Bliss' violations of the federal securities laws in its offering of Aqua interests. Likewise, the central issue in *Bumba* was whether the sale of the Aqua securities violated federal law and whether this violation barred collection of the promissory note. The Aqua interests Bliss sold to the Sos in 1982 were the same type as those it sold to the eighteen prevailing defendants in *Bumba.* Therefore, the first element for the application of the doctrine of collateral estoppel is satisfied.

■ In Count II, the plaintiffs seek to collect on the Agreement the defendants signed in connection with the defendants' acquisition of interest in the Solar–Bliss '83 partnership. The plaintiffs acquired the right to enforce the Agreement by assignment from Consumer Finance, formerly known as MagnaCard. Interestingly, the plaintiff Asher was the director, president and chief operating officer of MagnaCard, which acquired the Agreement by assign-

ment from Bliss. *See, Bumba,* 764 F.Supp. at 1270. Adding to the entangled nature of the facts, MagnaCard was 80% owned by Bliss. *Id.* at 1269. The defendants contend the investment offerings by Solar–Bliss '83 violated federal security law based on the *Bumba* court findings and the holding in *SEC v. A.T. Bliss and Co.,* 1984 WL 2377 (S.D.Fla.), that Aqua–Solar offerings and other A.T. Bliss offerings violated federal law. The Solar–Bliss '83 offerings were materially the same as the Aqua Solar offerings. *See Bumba,* 764 F.Supp. at 1272.

The court finds the Sos satisfy the first element for the application of collateral estoppel with respect to Count II. The central issue in *Bumba* was whether the sale of the A.T. Bliss family of securities, which included the Aqua–Solar, Solar–Bliss, Bliss–Solar and Bliss Partners partnerships, violated federal securities law. *Bumba,* 764 F.Supp. at 1271. The *Bumba* court found the A.T. Bliss Co. violated the federal securities law in offering the Bliss securities, which included the Solar–Bliss '83 partnership interests. Likewise in *SEC v. A.T. Bliss and Co.,* the court issued an injunction based on the SEC's finding that the acts of A.T. Bliss and its officers, Edward J. Roy and Reinhard Mueller, with respect to the sales of securities violated the anti-fraud provisions of the federal securities law. *See* 1984 WL 2377 (S.D.Fla.). Accordingly, because the previous cases involved the same issue of federal securities law violation as relied upon by the Sos in their defense to enforcement of the Agreement, the first element is satisfied with respect to Count II.

■ The Sos also satisfy the second element of collateral estoppel because the securities issue was actually litigated in *Bumba.* As Judge Noland noted in *Johnson v. Martin:*

... the issue in the prior action was actually litigated and decided ... Judge Aspen conducted a bench trial ... and memorialized his findings of fact and conclusions of law in an extensive and well-reasoned Opinion. Judge Aspen's Opinion reached and resolved the issue of the [sic] whether the defendants had valid defenses to the

plaintiffs' [Johnston and Asher's] action on the note.

*Martin* at 7.

Accordingly, the second element is satisfied with respect to both Counts I and II.

 With respect to the third element, the securities issue was essential to the final judgment in *Bumba.* The *Bumba* court stated:

> Because we have found that Bumba is relieved of any further obligation on the note held by the plaintiffs due to Bliss' violations of the federal securities laws, we need not go further ... *Id.* at 1284.

The *Bumba* court stated the law forbids an action to enforce the collection of the purchase price of a security that is sold in violation of the federal securities laws. *Bumba* at 1271 (citing *General Life of Missouri Invest. Co. v. Shamburger,* 546 F.2d 774, 783–85 (8th Cir.1976); and *Kaiser–Frazer Corp. v. Otis & Co.,* 195 F.2d 838, 843 (2d Cir.), *cert. denied,* 344 U.S. 856, 73 S.Ct. 89, 97 L.Ed. 664 (1952)). Judge Aspen found that Bliss' offering memorandum was materially misleading and that Bliss failed to register Aqua, a public offering, as required by federal securities laws. *Bumba* at 1278–79. Accordingly, the *Bumba* court concluded that Bliss violated federal securities laws when it sold the partnership interests to investors. The violation barred the plaintiff from collecting on the note. *Id.* at 1279. Thus, the Sos satisfy the third element of collateral estoppel because the securities issue was essential to the final judgment in the prior action.

 Finally, the Sos satisfy the fourth element for application of the doctrine of collateral estoppel. In *Bumba,* Johnston and Asher were the individuals who filed the complaint and they were represented by counsel. The same two individuals have brought the suit in the present case. Therefore, the court finds that Johnston and Asher, the parties against whom estoppel is invoked, were fully represented in the prior action. *See Johnson v. Martin,* No. IP 90–1669–C, 1992 WL 678508 (S.D.Ind.1992). Accordingly, all of the elements are satisfied for the application of collateral estoppel.

 Based on the foregoing, the court finds the doctrine of collateral estoppel precludes the plaintiffs from relitigating the issue of securities violations in the investment offerings that gave rise to the Promissory Note and the Agreement which form the basis for the Complaint. Accordingly, the defenses forwarded by the Sos bar the plaintiffs from proceeding against the defendants on the promissory note and on the Agreement. Therefore, the defendants are entitled to summary judgment on the plaintiff's complaint.

## CONCLUSION

The court hereby SETS ASIDE the parties' previous settlement agreement. For the foregoing reasons, Defendants' Motion for Summary Judgment on both counts is GRANTED.